UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMILY BEAUPRE,<br>*Plaintiff,*<br>v.<br>CHUBB & SON, INC.,<br>*Defendant.* | Civil No. 3:19-CV-834-JBA<br><br>August 6, 2020 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Emily Beaupre brings this diversity action against Defendant Chubb & Son, Inc., asserting that she suffered employment discrimination on the basis of her gender and political views in violation of Connecticut law. Defendant now moves to dismiss for lack of subject matter jurisdiction, on the basis that Plaintiff was an employee of independent corporate entity ACE American Insurance Company and so lacks standing to bring a claim against sister subsidiary Chubb & Son, Inc. ([Doc. # 19]). In the alternative, Defendant moves to compel arbitration. ([Doc. # 21].)

For the reasons that follow, Defendant's Motion to Dismiss is granted, leaving the Court without jurisdiction to consider Defendant's Motion to Compel Arbitration.

**I.     Background**

Plaintiff Emily Beaupre is a female resident of Clinton, Connecticut. (Am. Compl. [Doc. #18] Count One ¶ 3.) She is a registered Republican. (*Id.* Count Two ¶ 2.)

Defendant Chubb & Son, Inc., is a New York corporation with headquarters in Pennsylvania. (*Id.* Count One ¶ 4.) Chubb & Son, Inc., is an indirect subsidiary of the Zurich-based insurance company Chubb Limited. (Ex. E (Chubb Limited Form 10-K) to Def.'s Mem. Supp. Mot.

to Dismiss [Doc. # 20-1] at 2, Ex. 21.1.)[1] Chubb Limited is the product of a 2016 acquisition of the Chubb Corporation by ACE Limited, which is the parent company of ACE American Insurance Company. (*See* Ex. D (Chubb Press Release) to Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 20-1] at 1; *see also* Chubb Limited Form 10-K at 35.) As a result of the acquisition, Chubb & Son, Inc., became a sister subsidiary of ACE American Insurance Company, a separate corporate entity. (Chubb Limited Form 10-K at Ex. 21.1.)

Plaintiff was hired by ACE American Insurance Company on April 30, 2012, as a Technical Assistant within the Northeast Workers Compensation Claim Department. (Am. Compl. [Doc. #18] Count One ¶ 6) As a condition of her employment, Plaintiff electronically signed an arbitration agreement, which contains the following language:

---

[1] In support of its Motion to Dismiss, Defendant has appended exhibits, including a press release referenced in Plaintiff's Amended Complaint (Ex. D), the Chubb Limited Form 10-K that was filed with the SEC subsequent to the 2018 fiscal year (Ex. E), two filings from a related action that Plaintiff brought with the Connecticut Commission on Human Rights and Opportunities (Exs. B and C), and one filing with the Connecticut Superior Court (Ex. A).

Although a district court is generally limited to the factual allegations in a complaint, which are accepted as true, when determining a complaint's sufficiency, a court may also consider documents that are "incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (internal quotation marks and citation omitted). When adjudicating a motion to dismiss, a district court may also "take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (quoting Fed. R. Evid. 201(b)(2)). Finally, a court "may also look to public records," such as administrative and court proceedings, at this stage. *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Each of Defendant's exhibits falls into one of the above exceptions. Accordingly, the Court may consider them in adjudicating this Motion to Dismiss.

> [I]t is the policy of Chubb that arbitration by a neutral third party is the required and final means for the resolution of any covered employment-related legal claim not resolved by the internal dispute resolution processes. This Policy is a contract binding the employee and Chubb and is governed by the Federal Arbitration Act (9 U.S.C. §§1 et seq.).
>
> Both Chubb and the employee will be bound by any decision made by a neutral arbitrator. If the employee or Chubb do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but arbitration must be used before going to court.

(Ex. A (Arbitration Agreement) to Def.'s Mem. Supp. Mot. to Compel Arb. [Doc. 22-2] at 4.)[2]

On February 1, 2018, Chubb Limited CEO and Defendant Evan G. Greenberg, "sent a Global Email to all Chubb employees declaring his opposition to United States Government immigration policies which had recently been announced by the President of the United States." (Am. Compl. [Doc. #18] Count Two ¶ 6) Plaintiff alleges that she expressed to a co-worker that "she was deeply offended by the email and felt that the CEO's political views did not belong in the workplace," and was asked to report to her supervisor approximately three hours later. (*Id.* Count Two ¶¶ 7-8) She further alleges that her supervisor stated that "the company did not like the fact that the plaintiff was an avid Donald Trump supporter," gave her a warning, and "wr[ote] [her] up for her political views." (*Id.* Count Two ¶ 8)

In May 2017, Plaintiff applied for a promotion to the position of "WC Lost Time Adjuster," a position for which she was "fully qualified." (*Id.* Count One ¶ 7, Count Two ¶ 9.) In September

---

[2] "The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration." *Pomposi v. GameStop, Inc.*, No. CIV.A 3:09-CV-340VLB, 2010 WL 147196, at *1 (D. Conn. Jan. 11, 2010).

3

2017, the company announced that the position was awarded to Matthew Ramsey, "a male with half the plaintiff's experience." (*Id.* Count Two ¶ 10)

On October 10, 2017, the plaintiff requested a meeting with her previous supervisor, to whom she reported from 2012 to 2013. (*Id.* Count Two ¶ 12) Plaintiff alleges that when she asked whether she was "dead in the water," this male supervisor responded, "Well, Emily, there is a perception about you going around and your political views are not one with the company." (*Id.*)

On October 13, 2017, Plaintiff submitted her resignation, as she had "been led to believe that her political views would prevent any further advancement in the company." (*Id.* Count Two ¶ 13.)

On December 8, 2017, Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). (*Id.* Count One ¶ 2.) In the course of these proceedings, Defendant informed Plaintiff that she had "incorrectly named Chubb & Sons Inc" and that "ACE American Insurance Company is the employing entity within a group of companies operating under the name 'Chubb.'" (Ex. B (CHRO Letter) to Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 20-1] at 1.) On March 8, 2019, she received a Release of Jurisdiction from the CHRO. (Am. Compl. [Doc. # 18] Count One ¶ 2.)

On April 29, 2019, Plaintiff commenced an action against Chubb & Sons, Inc., in Connecticut Superior Court, alleging one count of gender discrimination, in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60(b)(1), *et seq.*, and one count of employment discipline or discharge on account of the exercise of her First Amendment rights, in violation of Conn. Gen. Stat. § 31-51q. (*See* Ex. A (Compl.) to Not. of Removal [Doc. # 1-1].) On May 31, 2019, Defendant removed this action to the United States District Court for the District of Connecticut, on the basis of diversity. (Not. of Removal [Doc. # 1] at 1.)

On June 25, 2019, Defendant moved for a pre-filing conference, asserting that Plaintiff lacked "standing to maintain a claim against an entity which has no causal connection to the alleged adverse employment action" and that "Plaintiff has executed an arbitration agreement which requires that any employment claims be submitted to an arbitrator." (Def.'s Req. for Pre-Filing Conf. [Doc. # 14] at 1.) The Court held a pre-filing conference on August 1, 2019, at which point the Court gave Plaintiff an opportunity to amend her Complaint. (*See* [Doc. # 17].)

On August 10, 2019, Plaintiff amended her Complaint, but did not seek to add any other defendant. Defendant then submitted its Motion to Dismiss ([Doc. # 19]), on September 5, 2019, and its Motion to Compel Arbitration, ([Doc. # 21]), on September 11, 2019.

## II.   Legal Standard

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000).

When adjudicating a motion to compel arbitration brought under the Federal Arbitration Act, courts "apply a standard similar to that applicable to a motion for summary judgment." *DuBois v. Macy's East Inc.*, No. 07–5441–CV, 2009 WL 2030195, at *1 (2d Cir. July 9, 2009). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the

party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

### III. Discussion

The Court will first address Defendant's Motion to Dismiss, brought under Rule 12(b)(1), as it must, as a threshold matter, determine whether the Court has subject matter jurisdiction over the pending action. *See Doctor's Assocs., Inc. v. Inder Pahwa & Satinder Pahwa*, No. 3:16CV00446(JCH), 2016 WL 7635748, at *3 (D. Conn. Nov. 3, 2016) ("Because the Court cannot act on [Defendants'] Petition to Compel Arbitration if there is a lack of subject-matter jurisdiction, the Court turns first to defendants' Motion to Dismiss."), *report and recommendation adopted sub nom. Doctor's Assocs. Inc. v. Pahwa*, 2016 WL 7410782 (D. Conn. Dec. 2, 2016).

Defendant asserts that dismissal is required because "Plaintiff has failed to assert a claim against her employer and will be unable to establish a causal connection between the alleged misconduct and her claimed injury," and so lacks Article III standing. (Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 20] at 6.) Defendant contends that Plaintiff's Amended Complaint "purports (incorrectly and in a conclusory fashion) to assign a parent-subsidiary relationship to ACE American Insurance Company and Chubb & Son, Inc.," and that "Plaintiff admits her employer was ACE American Insurance Company, and only infers that [ACE American Insurance] is an 'entity' through which Chubb & Son, Inc. does business." (*Id.* at 7-8.) Defendant asserts that, in copying the Chubb acquisition press release almost verbatim in her Amended Complaint, Plaintiff "incorrectly paraphrase[d] the Press Release, and inject[ed] 'Chubb & Son, Inc.' in place of 'The Chubb Corporation' and substitute[d] 'ACE American Insurance Company' for 'ACE Limited.'" (*Id.* at 4.) Defendant has also provided Chubb Limited's Form 10-K for the 2018 fiscal year to disclose that "ACE American Insurance Company is a subsidiary of Chubb INA Holdings, Inc.,

6

and that ACE American Insurance Company and Chubb & Son, Inc. are sister companies." (*Id.* at 7.) Defendant contends that because the "evidence submitted in support of this Motion establishes that ACE American Insurance Company is an independent corporate entity, wholly distinguishable from Chubb & Son, Inc. (a sister – not parent- company)" and because Plaintiff has "admit[ted] she was employed by ACE American Insurance Company," the conduct that she has "alleged to be the cause of her injury" is thus "attributable to 'some third party not before the Court.'" (*Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).) Defendant contends that, to the extent Plaintiff seeks veil-piercing for the purposes of establishing standing, she has not pleaded facts justifying this rare remedy. (*See generally* Def.'s Reply to Mot. to Dismiss [Doc. # 25].)

Without disputing the fact that she was never employed by Chubb & Sons, Inc., Plaintiff flatly asserts in her two-and-half-page opposition brief that "all of the many Chubb entities should be treated as one for purposes of imposing liability." (Pls.' Opp. to Def.'s Mot. to Dismiss [Doc. # 23] at 2.) Relying on a single case for the elemental proposition that veil-piercing may be appropriate where "'plaintiff can show that there was such a unity of interest and ownership [such] that the independence of the corporations had in effect ceased or had never begun,'" Plaintiff extrapolates that "Connecticut law clearly supports the plaintiff's position here that all of the many Chubb entities should be treated as one for purposes of imposing liability." (*Id.* at 2-3 (quoting *Angelo Tomasso, Inc. v. Armor Construction Paving, Inc.*, 187 Conn. 544, 554 (1982)).) Rather than attempt to rebut any of Defendant's evidence showing that Chubb & Sons, Inc., is an independent corporate entity, Plaintiff instead asserts that this evidence "demonstrate[s] an almost mind-boggling array of similarly-named corporations which may or may not be under a single corporate umbrella" and suggests it is thus unfair for Defendant to "claim[] that the plaintiff named the

wrong one." (*Id.* at 2.) In essence, Plaintiff argues that she has standing because parent company Chubb Limited is engaged in "a corporate shell game" that renders the corporate distinctions between ACE American Insurance Company and Chubb & Son, Inc., meaningless. (*Id.*)

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). To have standing, a plaintiff must establish, *inter alia*, that there is a "causal connection between the injury and the conduct complained of" and that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-561 (internal citation, quotation marks, and alterations omitted).

Here, Plaintiff has pleaded that she was employed by non-party ACE American Insurance Company, but she has not pleaded that Defendant Chubb & Sons, Inc., caused any of the injuries that arose from that employment. Furthermore, Defendant has demonstrated through Chubb Limited's Form 10-K that Chubb & Sons, Inc., and ACE American Insurance Company are separate subsidiaries.

Because Plaintiff alleges that her injuries are attributable to ACE American Insurance Company, Plaintiff may only establish standing here through the piercing of Defendant's corporate veil. "In order to pierce the corporate veil, a plaintiff must plead and prove that the corporate shield can be pierced under either the instrumentality rule or the identity rule." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 132 n.7 (2010). With one exception inapplicable to this matter, the instrumentality rule requires proof of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (internal quotation marks and citation omitted). "The identity rule has been stated as follows: If the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Id.* (alteration omitted).

In her Amended Complaint, Plaintiff alleges that Defendant Chubb & Sons, Inc., "was purchased by ACE American Insurance Company for an aggregate price of approximately $29.5 billion in cash and stock." (Am. Compl. Count One ¶ 4.) Although this allegation could perhaps help establish either "control," as required by the instrumentality rule, or "unity of interest and ownership," as required by the identity rule, Defendant has provided a copy of the original press release paraphrased by Plaintiff and has shown that Plaintiff has distorted the content of that press release. As a reading of the press release makes clear, ACE American Insurance Company *did not* purchase Chubb & Sons, Inc. (*See* Chubb Press Release at 1.) Rather, the press release announced that *ACE Limited* purchased the *Chubb Corporation*. (*Id.*) Although it may be so that the names of the subsidiaries and then-parents are similar enough as to cause confusion, confusion is different from "control." Indeed, Plaintiff's bald characterization of the structure of Chubb Limited enterprise as "mind-boggling" and conclusory assertion that these "corporate distinctions can be

9

set aside" fall far short of what is required for veil-piercing. (Pl.'s Opp. to Def.'s Mot. to Dismiss at 2.)[3] Because Plaintiff has not otherwise alleged the existence of any "exceptional circumstances" that would justify veil-piercing here, the Court cannot allow her to seek to hold Chubb & Sons, Inc., liable for ACE American Insurance Company's alleged actions. *See Davenport v. Quinn*, 53 Conn App. 282, 301 (1999) ("The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under 'exceptional circumstances.'").

Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims against Chubb & Sons, Inc., as the Court lacks any basis for piercing Defendant's corporate veil for the purposes of holding it responsible for ACE American Insurance Company's alleged violations of Connecticut law. Because the Court does not have jurisdiction, it must dismiss this action without considering Defendant's Motion to Compel Arbitration.

### IV. Conclusion

Defendant's Motion to Dismiss [Doc. # 19] is GRANTED. The Clerk is directed to terminate Defendant's Motion to Compel Arbitration [Doc. # 21] and close the case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of August 2020.

---

[3] What the Court finds "mind-boggling" are Plaintiff's decision to bring suit only against Chubb & Sons, Inc., even after she had been informed during her CHRO proceedings that she had "incorrectly named Chubb & Sons Inc.,"(CHRO Letter at 1), and her failure to cure this deficiency when given the opportunity to amend her Complaint prior to the filing of this Motion to Dismiss.